## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ROBERT SIKON, et al.,       )       CASE NO.  5:20-cv-0674
                            )
                            )
           PLAINTIFFS,     )       JUDGE SARA LIOI
                            )
vs.                         )
                            )       **MEMORANDUM OPINION AND**
                            )       **ORDER**
CARROLL COUNTY, OHIO, et al.,  )
                            )
                            )
          DEFENDANTS.    )

This matter is before the Court on defendants' motion (Doc. No. 6, Motion ["Mot."]) seeking a stay of proceedings in this civil action pending resolution of a criminal investigation and/or proceedings against defendant Jacob Barker ("Baker") arising out of the conduct alleged in plaintiffs' complaint. Plaintiffs filed a response in opposition (Doc. No. 11, Opposition ["Opp'n"]) and defendants replied. (Doc. No. 12, Reply ["Reply"].) For the following reasons, the Court grants defendants' motion, in part.

## I.    BACKGROUND

Plaintiffs, Robert Sikon and Melissa Ford ("plaintiffs")—who are co-administrators of the estate of Robert Sikon, III ("Sikon")—assert various causes of action arising out of events that occurred on November 16, 2019. (Doc. No. 1, Complaint, ["Compl."] ¶ 1.) Plaintiffs allege on that date, Baker, a Carroll County Sheriff's Deputy, stopped a Chevrolet truck that was being driven by Sikon's fiancée and in which Sikon was a passenger. (*Id.* ¶¶ 1–2.) Baker demanded to see Sikon's hands, and Sikon complied. (*Id.* ¶ 3.) Baker then approached the truck, opened the passenger door, and removed Sikon from the vehicle. (*Id.* ¶ 4.) Baker frisked Sikon for weapons and found none. (*Id.* ¶ 5.) Sikon asked Baker why he pulled the truck over. (*Id.* ¶ 6.) After Baker

responded, Sikon attempted to run into a vacant alley. (*Id.* ¶¶ 7–8.) Baker fired his gun at Sikon and four bullets struck Sikon in the back. (*Id.* ¶¶ 9–11.) Sikon collapsed and was in need of medical attention (*Id.* ¶ 13), but Baker did not render first aid (*Id.* ¶ 14). Sikon was taken by ambulance to Aultman Hospital where he was pronounced dead. (*Id.* ¶ 16.)

Following the shooting, Carroll County Sheriff Dale Williams (who is also a defendant in the instant action) requested that the Ohio Bureau of Criminal Investigation ("BCI") conduct a criminal investigation. (Mot. at 57[1].) The Carroll County Prosecutor also requested appointment of a special prosecutor to review the BCI investigation. (*Id.*) The special prosecutor was recently appointed, but the review is not yet complete. Thus, no decision has been made as to whether to present the case to a grand jury. (*Id.*) Defendants move to stay this action "until the criminal investigation is finally complete and, if a grand jury returns an indictment, the completion of the criminal proceedings." (*Id.*)

## II.    LAW AND ANALYSIS

"'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). Though "nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment … simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (citations omitted). In fact, "'the strongest case for deferring civil proceedings until after

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.'" *Id.* (quoting *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980)). A court's decision about whether to stay a case, however, requires an examination of the specific circumstances of the case. *Id.* Courts in the Sixth Circuit consider and balance six factors when determining whether a stay of civil proceedings is appropriate:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (quoting *Chao*, 498 F. Supp. 2d at 1037). In addition to those six factors, the court should consider the extent to which a defendant's Fifth Amendment rights are implicated. *Id.* (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1996) (further citations omitted)). The party seeking the stay has the burden of showing "'that there is pressing need for the delay, and that neither the other party nor the public will suffer harm from entry of the order.'" *McGee v. Madison Cty.*, No. 1:15-cv-01069, 2015 WL 3648986, at *1 (W.D. Tenn. June 10, 2015) (quoting *E.M.A. Nationwide, Inc.*, 767 F.3d at 627–28). The Court will address each of these factors in turn.

### A. Overlap of Issues in the Criminal Case

This factor weighs heavily in favor of granting a stay. Plaintiffs' civil suit and the BCI investigation both arise out of Baker's use of deadly force against Sikon on November 16, 2019. Defendants assert that the substantial overlap between the BCI investigation and this civil action—which are "inextricably intertwined[]" (Mot. at 58)—will place Baker in the difficult position of "defending himself in this civil matter and thereby exposing himself to making incriminating

statements or invoking his Fifth Amendment rights….” (Mot. at 59). Plaintiffs largely ignore this factor except to argue that “two of the three defendants—Carroll County and Sheriff Williams— have no Fifth Amendment rights at stake….” (Opp'n at 87.) That may be true, but there can be no doubt that all defendants' liability[2] is predicated on Baker's actions. And while the Court recognizes that no indictment has been filed—which the Court will address in greater detail below—“[a]ny indictment handed down as a result of the investigation will be based on the same factual circumstances that [p]laintiff[s] allege in [their] complaint.” *McGee*, 2015 WL 3648986, at *3. The degree of overlap between the cases is important because “[i]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay.” *Chao*, 498 F. Supp. 2d at 1039 (internal quotations marks and citation omitted). Because of the substantial overlap between this civil action and the pending criminal investigation, there is danger of potential self-incrimination issues. Thus, this factor weighs heavily in favor of granting a stay.

### B.  Status of the Criminal Case

This factor weighs in favor of denying defendants' motion. As plaintiffs correctly point out, there are currently no criminal charges pending against Baker and “[i]t is unclear whether an indictment will ever be issued and, if so, when.” (Opp'n at 86.) The case for a stay is obviously strongest when a defendant has already been indicted because “there is a likelihood that incriminating statements could be used against him….” *Walker v. Nw. Mutual Life Ins. Co.*, No. 5:15-CV-79-JMH, 2015 WL 5178702, at *2 (E.D. Ky. Sept. 4, 2015) (citation omitted). As plaintiffs note, “courts generally do not stay proceedings in the absence of an indictment.” (Opp'n at 86–87, quoting *E.M.A Nationwide, Inc.* 767 F.3d at 628.) “Still, courts may consider the status of criminal proceedings generally and some have granted a stay pre-indictment.” *In re Flint Water*

---

[2] The Court also notes that Carroll County and Sheriff Williams are essentially one defendant, since Williams is sued only in his official capacity. (Compl. ¶ 32.)

*Cases*, No. 5:16-cv-10444, 2019 WL 5802706, at *2 (E.D. Mich. Nov. 7, 2019) (citing *Chao*, 498 F. Supp. 2d at 1039). Here, Baker has not been indicted and there is no indication that an indictment is imminent.[3] This cautions against an indefinite stay but not, necessarily, a temporary stay.

### C.  Plaintiffs' Interest in Proceeding Expeditiously Versus Prejudice in Delay and Defendants' Private Interests

The third and fourth factors instruct courts to "balance the private interests of the parties against the potential prejudice faced by each." *Walker*, 2015 WL 5178702, at *2. Plaintiffs assert that they have a legitimate interest in pursuing their claims expeditiously and believe they would be significantly prejudiced by a stay. (Opp'n at 87.) Though plaintiffs do not explain how they would be "significantly prejudiced," they cite to the fact that no indictment has been issued in support of their claim that they would be harmed by a stay of "unknown duration." (*Id.*)

Defendants argue that without a stay, defendant Baker would be placed in "the dilemma of choosing between invoking [his] Fifth Amendment rights or compromising [this] civil case." (Mot. at 59.) If Baker were to invoke his Fifth Amendment right, defendants argue, he would "risk … an adverse inference from [his] refusal to testify." (*Id.*)

The Court finds that the fourth and fifth factors are largely neutral, as both parties have legitimate and important interests in their respective positions. There is no doubt that plaintiffs—and indeed all civil-action plaintiffs—have an interest in pursuing their claims expeditiously. This is perhaps of particular importance in this case because plaintiff lost a family member. The Court understands that plaintiffs seek to "learn[] all of the facts surrounding the death of their loved one." (*Id.*, citation and quotation marks omitted.) But a temporary stay may, in fact, aid plaintiffs in that goal, if the BCI investigation is completed and reviewed before the stay is lifted. If not,

---

[3] In their reply, defendants represent that "[c]ounsel has recently been informed [that,] due to the extraordinary COVID-19 restrictions, Carroll County envisions convening a grand jury in late summer or early fall, 2020. Thus, this pending criminal matter would likely be presented to a grand jury within at least the next six months." (Reply at 92.)

delay/prejudice to plaintiffs will have been minimal, allaying plaintiffs' concern about a "delay of unknown duration." (*Id.*)

Defendants' interest in the stay relates primarily to their ability to candidly engage in discovery while "Baker is under the cloud of a criminal investigation for Robert Sikon's death." (Reply at 95.) Defendants note that they have a significant interest in avoiding a situation in which Baker has to choose between invoking his Fifth Amendment right or defending this civil action. And defendants Carroll Country and Sheriff Williams' defenses rely heavily on Baker's ability to meaningfully defend this action. (Reply at 93.)

The Court finds that both parties have legitimate private interests in their respective positions and either party could be prejudiced, to some degree, if the Court adopted the opposing position. As such, these important factors are neutral. Sister courts faced with similar issues have found that "stays of limited duration [are] appropriate in [these circumstances]." *McGee*, 2015 WL 3648986, at *4 (finding that a limited stay, rather than an indefinite stay, is appropriate preindictment because the Court has no way of knowing when the criminal investigation will conclude). While the balance of the parties' hardships is the most important factor in determining whether a stay is appropriate, courts "must also consider whether granting [a] stay will further the interest in economical use of judicial time and resources." *Int'l Bhd. of Elec. Workers v. AT&T Network Sys.*, 879 F.2d 864 (Table), 1989 WL 78212, at *8 (6th Cir. July 17, 1989) (internal citations omitted).

### D. The Court's Interest

It is in the Court's interest to grant a temporary stay. It is quite likely that conducting discovery while the criminal investigation is pending, will lead to additional briefing, arguments, and discovery disputes related to Baker's Fifth Amendment invocation and disclosure of

documents related to the criminal investigation.[4] "It would not be an efficient use of Court resources to deny a stay and then to have to handle disputes regarding [Baker's] assertion of his Fifth Amendment privilege against self-incrimination." *Boerste v. Ellis, LLC*, No. 3:17-CV-298-GNS, 2017 WL 6377976, at *4 (W.D. Ky. Dec. 13, 2017). This is particularly true considering the temporary nature of the stay, as defendants assure the Court that "Carroll County envisions convening a grand jury in late summer or early fall, 2020." (Reply at 92.)

### E. Public Interest

The Court finds that the public interest also weighs in favor of a stay. The public has an interest in both the efficient use of Court resources and the resourceful disposition of actions before the Court. A temporary stay will delay the start of discovery. However, due to the unique posture of this case—the fact that there is an overlapping criminal investigation into police use of deadly force—delay is virtually inevitable (whether it be due to a stay or discovery disputes). Therefore, the relatively short length of the stay will have minimal effect on the public's interest in prompt resolution of this matter. Further, the temporary stay will allow time for the BCI investigation and the special prosecutor's review to be completed, and to the extent the investigation is completed before the stay is lifted, the parties will be able to proceed with more facts and additional clarity. Such a resolution is certainly in the public interest.

Plaintiffs argue that a stay is against the public interest because "civil rights cases are often the only way police officers are held accountable." (Opp'n at 88.) Even if that assertion were true—which the Court need not decide—a temporary stay will have only a momentary impact on the present case's deterrence value. The sixth factor weighs in favor of a temporary stay.

---

[4] The Court's concern appears well-founded because the parties have already—while the instant motion was pending—been unable to resolve a discovery-related issue. (*See* Doc. No. 13 at 99–100, "Undersigned counsel contacted one of [p]laintiffs' counsel … seeking an extension of time from the 30 day due date until the [C]ourt rules on the pending Motion [to] Stay. However, [p]laintiff's [sic] counsel would not agree….".)

### III.     CONCLUSION

For all the aforementioned reasons, the Court concludes that the factors favoring granting a temporary stay outweigh those favoring denying the stay and, therefore, a temporary stay is appropriate in this case. As such, defendants' motion to stay the proceedings (Doc. No. 6) is granted, in part, and this matter is temporarily stayed for 120 days from the date of entry of this order. On or before October 13, 2020, the parties shall submit a joint status report updating the Court on the status of the criminal investigation. The Court will then schedule a telephonic conference with an eye toward lifting the stay, if appropriate.[5] If the BCI investigation, and/or the special prosecutor's review, is completed in the interim, the parties shall notify the Court immediately. Defendants' remaining motions—motion for an extension of the deadline to respond to plaintiffs' discovery requests (Doc. No. 13) and motion to excuse counsel's appearance at the July 7, 2020 case management conference (Doc. No. 15)—are denied as moot.

**IT IS SO ORDERED**.

Dated: June 12, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[5] The case management conference currently scheduled for July 7, 2020 is hereby continued until further order of the Court.